EXHIBIT A3

State of Maine
Cumberland, ss

Superior Court
Civil Action
Docket No.: CV-22-185

Randi Kirshbaum,

    Plaintiff,

v.

Saga Communications of New
  England, LLC, d/b/a Portland Radio
  Group

    Defendant.

## Complaint for Violation of Civil Rights and Demand for Jury Trial

Randi Kirshbaum complains against Defendants as follows:

### Summary of the Action

1. Despite her very favorable performance reviews, on May 18, 2020, Randi Kirshbaum was fired from her radio job of 38 years because she refused to defy her doctor's advice that she continue to work from home and not risk her life by returning to working in person in a compressed work space in the midst of the deadly COVID-19 global pandemic.

REC'D CUMB CLERKS OF
MAY 18 '22 PM3:04

2. Ms. Kirshbaum's primary care doctor advised Ms. Kirshbaum to stay home and otherwise quarantine because her doctor believed that Ms. Kirshbaum was particularly vulnerable to COVID-19, and quarantining based upon that advice prevented Ms. Kirshbaum from working in the office as required of her by Saga.

3. Randi Kirshbaum was terminated from her employment by Defendant on May 18, 2020, in violation of her rights under (1) the Emergency Paid Sick Leave Act (EPSLA), a component of the Families First Coronavirus Response Act (FFCRA), Pub. L. No. 116-127, § 5101 et seq., 134 Stat. 178 (2020), 29 U.S.C. §§ 5101–5111; and (2) the Emergency Family and Medical Leave Expansion Act ("EFMLEA"), Pub. L. No. 116-127, § 3101 et seq., which temporarily amended the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–2654.

## Parties

4. Plaintiff, Randi Kirshbaum, is a citizen of the United States and she lived in Scarborough, Maine in 2020.

5. Defendant, Saga Communications of New England, LLC, (Saga), does business under the name Portland Radio Group, had fewer than 500 employees in 2019 and 2020.

## Jury Trial Demand

6. Ms. Kirshbaum hereby demands trial by jury on all issues triable to a jury.

## Jurisdiction and Venue

7. Jurisdiction properly lies in this Court under 4 M.R.S. § 105, based on the Superior Court's general civil jurisdiction.

8. Venue is proper in this Court under 14 M.R.S. § 501 because the cause of action took place in Cumberland County and Defendant's principal place of business in Maine is in Cumberland County.

## Factual Allegations

9. In 1982, Ms. Kirshbaum started working for Saga in Portland, Maine. In 1983, she was promoted to Program Director.

10. Ms. Kirshbaum was inducted into the Maine Association of Broadcasters Hall of Fame in 2006 and received the National Association of Broadcasters Marconi Radio Award in 2011.

11. On March 15, 2020, Governor Janet Mills declared a Civil State of Emergency for the State of Maine because of the COVID-19 pandemic and issued measures to protect the public's health and safety due to very serious threats of death and serious injury from the coronavirus pandemic.

12. On March 23, 2020, Ms. Kirshbaum sought advice from her primary care physician, Dr. Allyson Howe, about her individualized risk of exposure to COVID-19 given her age (born in 1954), history of frequent lung infections, and familial history of a deadly lung disease, pulmonary fibrosis.

13. Based on her assessment of Ms. Kirshbaum's health risk factors, Dr. Howe strongly recommended that Ms. Kirshbaum work from home due to the COVID-19 pandemic and Ms. Kirshbaum's heightened and significant risk of death or other serious injury if Ms. Kirshbaum contracted it.

14. On March 23, 2020, Ms. Kirshbaum emailed the General Manager (GM) of the station, Bob Adams, and Business Manager Nancy O'Brien. In Ms. Kirshbaum's email, she explained that her doctor advised her to minimize her exposure to other workers because she was in a high risk category for contracting COVID-19 and developing especially severe symptoms. Dr. Howe also recommended that she record her shows at the studio and then go home to do the rest of her work remotely. Ms. Kirshbaum provided them with a supporting note from Dr. Howe dated March 23, 2020.

15. On March 24, 2020, Governor Mills ordered all non-essential businesses and operations to close their public-facing physical locations, meaning those that allow customer, vendor, or other in-person contact.

16. On April 1, 2020, Ms. Kirshbaum consulted again with Dr. Howe,

who again recommended that Ms. Kirshbaum work exclusively from home because of the increasing number of outbreaks of COVID-19 in Cumberland County.

17. Dr. Howe's note stated, "the CDC is recommending that reducing exposure to the community is preferred at this time. I recommend that Randi work exclusively from home at this this time."

18. Ms. Kirshbaum provided Dr. Howe's note to GM Adams who then passed it along to Human Resources Director Annette Calcaterra.

19. With Ms. Kirshbaum's permission, HRD Calcaterra spoke with Dr. Howe on about April 1, 2020, to address any questions or concerns Saga management had about her April 1 note directing Ms. Kirshbaum to work exclusively from home.

20. HRD Calcaterra's notes from her conversation with Dr. Howe state: "Randi is age 66, high risk. She wants limited exposure to staff. I asked what additional could be provided for Randi to remain working in the station. She said her own office, studio and bathroom."

21. On April 1, 2020, Ms. Kirshbaum began working remotely from home in compliance with Ms. Kirshbaum's doctor's instructions.

22. On about April 2, 2020, GM Adams provided Ms. Kirshbaum with a confidential work from home Agreement from HRD Calcaterra.

23. On April 3, 2020, Ms. Kirshbaum emailed HRD Calcaterra to notify her that she would not be signing the Agreement because she was entitled to a reasonable accommodation under the American with Disabilities Act, "particularly as I can perform my essential duties remotely. It is improper to attach any conditions to granting an accommodation. This is an ongoing interactive process."

24. On April 3, 2020, Ms. Kirshbaum also advised HRD Calcaterra that she might be forced to go out on leave under the Family Medical Leave Act if Saga refused to accommodate Ms. Kirshbaum's request to work from home.

25. HRD Calcaterra responded in an April 4, 2020 email: "The Agreement that was provided to you would have granted you accommodations to work from home for two weeks. The two-week trial would allow us to determine if the arrangement was working for us, based on your essential Brand Manager Programming job duties."

26. After follow-up discussions between Ms. Kirshbaum's then attorney and Saga's in-house counsel, John Hancock, changes were made to the Agreement. On April 8, 2020, Ms. Kirshbaum signed the revised work from home Agreement. Senior Vice President of Operations Chris Forgy signed the Agreement on behalf of Saga.

27. The Agreement stated:

> Employer shall permit Employee to perform all normal work activities and duties from her place of residence. The Term shall be automatically extended for additional periods of two weeks (2) weeks (the "Extension Term"), until Employer provides Employee with written notice of non-extension at any time during the current Term or Extension.
>
> . . .
>
> If conditions arise to the extent that Employer has to provide Employee/Manager with written notice of non-extension, Employer shall also provide the reason that working remotely is no longer feasible for the on-going effective operation of the programming oversight of the company. If the Employer and Employee are unable to reach an agreement or solution, Employee/Manager understands that Employer may end Employee's working from home.

28. From April 1 until May 17, Ms. Kirshbaum worked remotely from her home. She was able to effectively perform all essential duties of her job, including the management of her three staff. They were all seasoned employees whom she had trained and worked successfully before the Pandemic struck.

29. One staff member ("BH") said he preferred not having Ms. Kirshbaum in the office because they were able to communicate more effectively, face-to-face, by videoconference, without having to distance or wear masks as they would if they were in the office together.

7

30. GM Adams told Ms. Kirshbaum that she was the "best work-from-home-er" he had.

31. On April 14, 2020, Governor Mills extended Maine's state of civil emergency due to COVID-19 for another thirty days, through May 15, 2020.

32. On May 4, 2020, HRD Calcaterra emailed Ms. Kirshbaum notice of the non-extension of her temporary work from home Agreement with an effective date of May 11, 2020.

33. The notice said: "Working remotely is no longer feasible for the on-going effective operation of the programming oversight of the Company as the State is reopening."

34. Other radio stations, including iHeartRadio, Cumulus, Entercom/CBS, Hubbard, Radio One, Townsquare Media—including their five stations in Portland, Maine, and WBLM based out of Portland, Maine, were then allowing their managers to work remotely based on the guidelines of the CDC and State public health authorities.

35. Ms. Kirshbaum responded to HRD Calcaterra and let her know that she would consult with her doctor for medical guidance. She also provided HRD Calcaterra with a copy of Governor Janet Mills' Executive Order, which extended stay at home restrictions through May 31, 2020.

36. CEO Ed Christian and HRD Calcaterra called GM Adams on May 5, 2020, to ask how things had been going with Ms. Kirshbaum's work from home arrangement. GM Adams told them Ms. Kirshbaum had not "missed a beat" working remotely.

37. On May 5, 2020, Ms. Kirshbaum had a telemedicine appointment with Dr. Howe to discuss whether she could safely return to working in-person in the office. Ms. Kirshbaum notified Dr. Howe that Ms. Kirshbaum's mom died with pulmonary fibrosis when she was 75 years old and that she developed it after being exposed to respiratory syncytial virus RSV. Ms. Kirshbaum also explained that her mom's doctor told her that she was at risk for pulmonary fibrosis.

38. They then discussed Ms. Kirshbaum's history of frequent, serious lung infections. Ms. Kirshbaum explained that her physical work office is relatively small with compressed common area spaces.

39. Dr. Howe told Ms. Kirshbaum that there is a significant genetic risk that goes with pulmonary fibrosis and that about 30% of first-degree relatives can be affected, with many of those not knowing they have a problem until something—like a severe lung infection—starts the process.

9

40. Dr. Howe again advised Ms. Kirshbaum to work from home based on the risk factors of her age, history of lung infections, and her mom's history of fatal pulmonary fibrosis.

41. Ms. Kirshbaum explained to Dr. Howe that Saga was demanding that she provide some form of risk analysis to see if she could safely work in person at the office. Dr. Howe agreed to speak the following week with HRD Annette Calcaterra about her risk assessment about whether Ms. Kirshbaum could safely return to working in person at the office.

42. On May 5, 2020, following the telemedicine appointment with Dr. Howe, Ms. Kirshbaum forwarded her updated medical note from Dr. Howe to HRD Calcaterra. The note stated:

> Unfortunately the risk of coronavirus infection continues in our area. Because of the risk factors that Randi has (age and medical comorbidities), I am concerned that she would be at significant risk of serious illness if she were to contract the virus. I recommend that she work remotely until further notice.

43. On May 8, 2020, HRD Calcaterra responded that, as a manager, Ms. Kirshbaum needed to return and resume her oversight of programming in the building rather than remotely. She extended the work from home Agreement by one additional week to May 18 but wrote, "If you elect not to return, this will be considered a voluntary resignation."

10

44. Ms. Kirshbaum responded to HRD Calcaterra's email by forwarding her remote work log, Dr. Howe's medical note, information from the EEOC on guidance for employers in the context of the COVID-19 pandemic, and a renewed request for a conference call to implement in good faith the resolution process provided by paragraph 4 of the work from home Agreement.

45. Ms. Kirshbaum also wrote, "Under no circumstances should you consider that I am voluntarily resigning from the company to which I have dedicated 38 years. Nor should I be forced to choose between my health and my job."

46. A conference call was scheduled on May 13 between HRD Calcaterra, Attorneys John Hancock, VP Forgy, Ms. Kirshbaum's then attorney Robert Kline, Dr. Howe, and Ms. Kirshbaum.

47. During the May 13 conference call, Dr. Howe conveyed the following information to Saga senior management:

    a. She reiterated that Ms. Kirshbaum is at high risk for contracting COVID-19 because of her age and familial pulmonary fibrosis;

    b. Discussed the Maine CDC and US CDC age-based guidelines for COVID-19;

c. Detailed Ms. Kirshbaum's familial risk for pulmonary fibrosis, noting that she had a 31-32% risk of developing the disease if triggered by a serious respiratory component which is a primary component of the COVID-19 infection;

d. Reinforced her recommendation that Ms. Kirshbaum continue to work remotely to minimize her exposure to COVID-19; and

e. Pointed out that CDC guidance is evolving as we continue to better understand the risks and that what is recommended today could easily change in a month.

48. VP Forgy said that Ms. Kirshbaum was not able to lead from home and that she needed to be in the office because the office was returning to normal operations.

49. VP Forgy would only allow Ms. Kirshbaum to continue to work from home if she relinquished all management responsibilities, which would mean a demotion and a $50,000 pay cut.

50. VP Forgy issued an ultimatum: if Ms. Kirshbaum did not accept the demotion or return to the office on May 18, she would be laid off.

51. Saga failed to offer a paid medical leave of absence under the EPSLA and the EFMLEA. Saga also failed to provide notice to Ms. Kirshbaum of her rights under those laws.

52. On the evening of May 17, Ms. Kirshbaum sent a letter to VP Forgy again outlining her management successes while working remotely, her desire to retain her position at the Portland Radio Group, and a request that Saga reconsider its stance on her request to work from home. She reiterated that denying her request was inconsistent with the EEOC's guidance on COVID-19 and the Americans with Disabilities Act (ADA), and that the Portland office's compressed workspace made social distancing infeasible.

53. On the morning of May 18, VP Forgy sent a reply email and officially laid Ms. Kirshbaum off.

### Legal Claim

54. The allegations in paragraphs 1-53 are realleged.

55. Under the EPSLA and EFMLEA, as of May 18, 2020, Ms. Kirshbaum was entitled to take COVID-19 related leave because she was unable to work in the office due to a state quarantine or isolation order related to COVID-19 and because she had been advised by a health care provider to self-quarantine related to COVID-19.

56. Under the EPSLA, Saga was required to provide Ms. Kirshbaum up to two weeks (80 hours) of paid sick leave.

57. As a direct and proximate result of Defendant's violation of Ms. Kirshbaum rights to leave and retaliation against her for needing leave, she has suffered damages, including, but not limited to, back pay and benefits, emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to reputation, and other pecuniary and non-pecuniary losses.

**Wherefore,** Plaintiff requests relief against Defendant as follows:

(a) Enter declaratory relief that Defendant violated Plaintiff's statutory civil rights to leave related to COVID-19;

(b) Enter injunctive relief ordering Defendant to reinstate Ms. Kirshbaum to her employment as if she had never been fired.

(c) Award Ms. Kirshbaum back pay for lost wages and benefits and prejudgment interest thereon or, in lieu thereof, front pay for future lost wages and benefits;

(d) Award Ms. Kirshbaum liquidated damages in an amount equal to the amount of back pay and benefits due to her;

(e) Award compensatory damages in amounts to be determined at trial by the jury and prejudgment interest thereon;

(f) Award Plaintiff full costs and reasonable attorney's fees; and

(g) Award such further relief as is deemed appropriate.

Respectfully submitted,

Date: May 18, 2022

*David G. Webbert* (signature)

David G. Webbert, Bar No. 7334
Johnson & Webbert, LLP
160 Capitol Street, Suite 3
Augusta, Maine 04330
Tel: (207) 623-5110
dwebbert@work.law

(signature)

Ryan M. Schmitz, Bar No. 6345
Johnson & Webbert, LLP
160 Capitol Street, Suite 3
Augusta, Maine 04330
Tel: (207) 623-5110
rschmitz@work.law

*Attorneys for Plaintiff*